```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                      ) | CRIMINAL ACTION |
| )                        | No. 05-1735-CBS |
| BILLY NSUBUGA,          ) | |
|         Defendant,      ) | |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
**August 5, 2005**

**SWARTWOOD, C.M.J.**

I.  Nature of the Offense and the Government's Motion

On July 29, 2005, a criminal Complaint was filed, charging Billy Nsubuga ("Ms. Nsubuga") with committing Bank Fraud, Mail Fraud, Forgery and False Use of a Passport and Fraud in Connection With Identification Document in violation of 18 U.S.C. §§ 1344, 1341, 1543, and 1028(a)(7).

At Ms. Nsubuga's initial appearance on August 1, 2005, in connection with this Complaint, she was advised of her right to a preliminary examination in accordance with Fed.R.Crim.P. 5.1 and the Government moved for a detention hearing pursuant to 18 U.S.C. 3142(f)(2)(A)(risk of flight).

A consolidated probable cause/detention hearing was scheduled for August 4, 2005.  However, prior to that hearing, Ms. Nsubuga

waived her right to a probable cause hearing. A hearing was then held on the issue of detention and at that hearing, Ruth M. Mendonca, Postal Inspector, testified on behalf of the Government and was cross-examined by Ms. Nsubuga's counsel.

## II. Findings of Fact

1. On August 2, 2002, a Post Office Box application was filed in the name of Rebecca Musoke for Mail Box 169, 1971 Western Avenue, Albany, New York. The Mail Box 169 address constitutes what is commonly referred to as a "mail drop" (hereafter, the "Albany Mail Drop"). The person submitting the application presented as identification a Ugandan Passport in the name of Rebecca Musoke. The passport presented is not a genuine Ugandan passport and the person pictured in the passport is not Rebecca Musoke, rather it is Ms. Nsubuga. In addition, the person submitting the application presented a California identification card in the name of Rebecca Musoke. The person pictured in the identification was Ms. Nsubuga. The residential address provided on the application was an address at which Ms. Nsubuga had once resided.

2. A bank account was opened with an initial deposit of Eighty Dollars at Key Bank in Albany, New York ("Key Bank account") in the name of Rebecca Musoke using the Albany Mail Drop as the listed address. No further deposits were made into the account.

3.  The fraudulent passport and California identification card referred to in Paragraph One were later used to open a mail drop in Somerville, Massachusetts (the "Somerville Mail Drop") and the passport was used to open an account at Citizens Bank in Quincy, Massachusetts ("Citizens Bank account"), both in the name of Rebecca Musoke.

4.  The application submitted to open the Somerville Mail Drop contains Ms. Nsubuga's fingerprints.

5.  The Citizens Bank account was opened with an initial deposit of One Hundred Dollars and listed the Somerville Mail Drop as Ms. Musoke's address.

6.  On September 12, 2002, a check in the amount of $9,724 and payable to Rebecca Musoke was written on the Key Bank account and deposited into the Citizens Bank account.

7.  On September 13, 2002, a check for $9,300 written on the Citizens Bank account payable to "cash" and endorsed by Rebecca Musoke was cashed at the Citizens Bank branch in Revere, Massachusetts.  A Ugandan passport in the name of Rebecca Musoke was used as identification to cash the check.

8.  On September 13, 2002, a check in the amount of $9,874 and payable to Rebecca Musoke was written on the Key Bank account and deposited into the Citizens Bank account.

9.  On September 16, 2002, a check in the amount of $9,500 written on the Citizens Bank account was cashed at the Citizens

Bank branch in Revere, Massachusetts. The check was payable to cash and endorsed in the name of Rebecca Musoke.

10. Also on September 16, 2002, checks for $21,000 and $9,040 payable to Rebecca Musoke were drawn on the Key Bank account and deposited into the Citizens Bank account.

11. On September 17, 2002, a $19,000 check payable to Rebecca Musoke and drawn on the Citizens Bank account was cashed and a $600 check payable to cash and endorsed by Rebecca Musoke was cashed at a Citizens Bank branch.

12. On September 17, 2002, Key Bank returned to Citizens Bank the $9,724 check which had been deposited into the Citizens Bank account on September 12. Citizens Bank then put a hold on the Rebecca Musoke account. Thereafter, all of the Key Bank checks which had been deposited into the Citizens Bank account were returned unpaid.

13. The total amount of loss suffered by Citizens Bank relating to checks made out to Rebecca Musoke is $39,951.12.

14. Additional checks drawn on the Key Bank account payable to (i) Erinah Nabaale, aggregating $28,722 and (ii) Hariat Nalubega aggregating $38,000, which were deposited into accounts at Citizens Bank and returned unpaid have been linked to Ms. Nsubuga. Citizens Bank has suffered a loss of $19,744.68 as a result of withdrawals made on these accounts.

4

15. Ms. Nsubuga has admitted that she obtained two fraudulent passports which contain a photo identification of her. Ms. Nsubuga paid $500 for one of the passports and does not know the whereabouts of the woman from who she purchased the passport. Ms. Mendonca testified that in addition two passports which she has examined (which contain Ms. Nsubuga's photograph), there are three additional false passports which are linked to similar fraudulent activity and which can be tied to Ms. Nsubuga. Ms. Nsubuga when questioned could not recall these passports.

### III.   Probable Cause

Ms. Nsubuga waived her right to a probable cause hearing.

### IV.   Detention

#### A.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of

the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) *clear and convincing evidence*, that the Defendant is a danger to the community, or (2) a *preponderance of the evidence,* that the Defendant poses a risk of flight. <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), *cert. denied*, 479 U.S. 978, 107 S.Ct. 562 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose a financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk

6

that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release.  See  United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e).  Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no

7

condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 757 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community", the judicial officer is compelled to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> 
> (2) the weight of the evidence against the person;
> 
> (3) the history and characteristics of the person, including--
> 
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>   (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

>   (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

>   V.  <u>Discussion of Whether Detention is Warranted</u>

>       A.  <u>Ms. Nsubuga's History and Characteristics</u>

Ms. Nsubuga was born in Uganda on December 23, 1974. Ms. Nsubuga entered the United States in 1993 and was granted asylum. Ms. Nsubuga was granted legal permanent residency status in 1998. Ms. Nsubuga's Ugandan passport was seized upon her arrest.

Ms. Nsubuga married Eddy Yawe in 2001 and the couple separated in 2002. The couple have no children. Ms. Nsubuga has two children, ages seven and three, from prior relationships, who reside with her. Ms. Nsubuga's father lives in the United States (she is not sure where) and her mother resides in Georgia. Ms. Nsubuga has no contact with her parents. Ms. Nsubuga has fourteen siblings residing in the United States (in Connecticut, Illinois and one in Massachusetts) some of whom are naturalized citizens. Ms. Nsubuga has an aunt in London and aunts, uncles and grandparents residing in Uganda. Ms. Nsubuga's oldest son is presently in London where he travels once a year.

Ms. Nsubuga has resided at various addresses in Malden, Massachusetts since 1995, for the past five months with her sister and her two children. For two years prior to that, she resided in Albany, New York.

Ms. Nsubuga has traveled to Uganda for one month in 2000, three months in 2002 and two weeks in 2004. She has traveled to London for shorter periods.

Since 1998, Ms. Nsubuga has worked on and off as a home care provider through Griswold Special Care Agency.

B. <u>Nature of Offense; Weight of the Evidence; Rebuttable Presumption; Nature and Seriousness of Danger Posed by Ms. Nsubuga's Release; Risk of Flight</u>

1. <u>Nature Of The Offense</u>

Ms. Nsubuga has been charged with Bank Fraud, Mail Fraud, Forgery, False Use of a Passport and Fraud in connection with identification documents. If she is found guilty of the offenses charged in the Complaint, Ms. Nsubuga could be incarcerated for up to thirty years and thereafter, deported.

2. <u>Weight of the Evidence</u>

The Government has presented overwhelming evidence that Ms. Nsubuga has used multiple false identification documents, including passports, to defraud various banks.

3. <u>Whether Ms. Nsubuga Poses A Risk Of Flight</u>

Ms. Nsubuga has substantial ties to this District where her two children and sister reside. However, she also has ties to

Uganda where her grandparents and various aunts and uncles reside and to London, where her aunt resides and where her son makes yearly extended visits. Ms. Nsubuga has been able to obtain multiple false identification documents, including passports. If Ms. Nsubuga is convicted of the offenses charged in the Complaint, she faces a substantial period of incarceration followed by almost certain deportation. Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that Ms. Nsubuga poses a risk of flight and that there are no conditions or combination of conditions that will assure her appearance in this case.

## VI.   Order of Detention

In accordance with the foregoing memorandum, IT IS ORDERED:

1. That Ms. Nsubuga be committed to the custody of the Attorney General, or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Ms. Nsubuga be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Ms. Nsubuga is detained and confined shall deliver Ms. Nsubuga to an authorized Deputy United States

Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/S/CHARLES B. SWARTWOOD, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE